NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1429
_____

In re: ROBERT J. MURPHY,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-mc-00217)
U.S. Chief District Judge:  Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 14, 2023
_____

Before: SHWARTZ, RESTREPO, and CHUNG, Circuit Judges.

(Filed: July 18, 2023)
_____

OPINION*
_____

SHWARTZ, Circuit Judge.

Robert Murphy appeals the United States District Court for the Eastern District of

Pennsylvania's imposition of reciprocal discipline after Pennsylvania suspended his

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

license to practice law for five years.  Because the District Court did not abuse its discretion in imposing reciprocal discipline, we will affirm.

I

A

Pennsylvania's Office of Disciplinary Counsel ("ODC") notifies an attorney when it receives and investigates a complaint and provides the attorney with an opportunity to respond.  Pa. R.D.E. § 208(a)(1); 204 Pa. Code § 87.7(a).  After the attorney responds, the ODC may, among other things, press formal charges via a petition for discipline.  Pa. R.D.E. §§ 208(a)(2), (b)(1).  If the ODC files such a petition, the Pennsylvania Disciplinary Board ("Board") appoints either a committee or a special master to conduct a hearing where the attorney and the ODC may present evidence and arguments.  Pa. R.D.E. § 208(b); 204 Pa. Code § 89.93.  The committee or special master makes a recommendation to the Board which can either affirm or change the recommendation.  Pa. R.D.E. § 208(c), (d).  After the Board issues its decision, the Pennsylvania Supreme Court undertakes its own de novo review and determines whether, and what, punishment is warranted.  Pa. R.D.E. § 208(d)(iii), (e).

B

In 2010, Murphy represented a claimant before a workers' compensation judge in Pennsylvania.  Before a scheduled hearing, the Judge's secretary called Murphy and opposing counsel separately to inform them of the Judge's rulings on several outstanding matters.  She spoke to opposing counsel and left a message on Murphy's voicemail.  That

same day, opposing counsel sent a letter to the Judge and Murphy that memorialized the contents of the call.

At the hearing, Murphy accused the Judge and opposing counsel of engaging in improper ex parte communications based on the phone call and asked the Judge to recuse herself from the case, which she declined to do. Murphy continued to request the Judge's recusal and filed a petition for mandamus and/or prohibition in the Commonwealth Court of Pennsylvania, accusing the Judge and opposing counsel of multiple ex parte communications and seeking to enjoin the Judge from moving forward with the workers' compensation case based on the alleged ex parte communications. Because of Murphy's lawsuit, the Judge recused herself, and the workers' compensation case was transferred to a different Judge.[1] Murphy also requested the new Judge be recused, alleging that the new Judge also engaged in multiple, improper ex parte communications with opposing counsel. After the new Judge denied the recusal request, Murphy filed another petition for mandamus and/or prohibition in the Commonwealth Court, asking the court to enjoin the second Judge from hearing the workers' compensation case.

In 2012, the ODC notified Murphy that it was "considering a complaint against [him]" related to his purportedly false allegations of ex parte communications against the two judges and opposing counsel because false accusations violate Pennsylvania Rules of

---

[1] The Commonwealth Court dismissed Murphy's petition for mandamus and/or prohibition as moot after the judge recused herself.

3

Professional Conduct ("RPC") 3.1, 3.3(a)(1), 8.4(c), and 8.4(d).[2] App. 296**, 301**. After

Murphy responded, the Board issued an order deferring the disciplinary proceedings

pending the conclusion of the workers' compensation case. See J.A. at 265, Murphy v.

Off. of Disciplinary Couns., 820 F. App'x 89 (3d Cir. 2020) (No. 19-3526), ECF No. 38.[3]

When the workers' compensation case was resolved in 2016, the Board reactivated the

proceedings, Id. at App. 267, and the ODC filed a petition for discipline against Murphy.[4]

A special master held a disciplinary hearing, concluded that Murphy violated RPC 3.1,

3.3(a)(1), 8.2(a), 8.4(c), and 8.4(d),[5] and recommended a five-year suspension from the

practice of law.[6] The Board overruled Murphy's objections to the special master's report

---

[2] The ODC later informed Murphy that it was also considering whether his actions violated Pennsylvania Rule of Professional Conduct 8.2(a). Murphy v. Off. of Disciplinary Couns., 820 F. App'x 89 (3d Cir. 2020) (No. 19-3526), ECF No. 38..

[3] We may take judicial notice of the filings in Murphy's federal lawsuit against the ODC, Murphy v. Off. of Disciplinary Couns., No. 17-cv-01239, 2019 WL 4752059 (E.D. Pa. Sept. 30, 2019), aff'd, 820 F. App'x 89 (3d Cir. 2020)., and others, because they are public records. McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009).

[4] The ODC filed an amended petition several months later.

[5] RPC 3.1 states "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." RPC 3.3(a)(1) provides that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal." RPC 8.2(a) prohibits lawyers from making any "statement that [they] know[] to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." RPCs 8.4(c) and (d) state it is "professional misconduct" for a lawyer to (1) "engage in conduct involving dishonesty, fraud, deceit or misrepresentation," or (2) "engage in conduct that is prejudicial to the administration of justice."

[6] Murphy's disciplinary hearing originally began in 2017 before a hearing committee. The committee recommended a mistrial be granted and that new proceedings begin with a new hearing committee after determining that the ODC had failed to provide Murphy a document concerning a witness. J.A. at 345-49, Murphy v. Off. of Disciplinary Couns., 820 F. App'x 89 (3d Cir. 2020) (No. 19-3526), ECF No. 38. Both

4

and also recommended a five-year suspension. The Pennsylvania Supreme Court adopted the recommendation and imposed the punishment.

The United States District Court for the Eastern District of Pennsylvania thereafter issued an order directing Murphy to show cause as to why it should not impose reciprocal discipline. After a hearing, a three-judge Panel: (1) determined that reciprocal discipline was warranted because Murphy (a) received due process, (b) failed to show that the proof against him was lacking, and (c) did not prove that reciprocal discipline would result in a grave injustice or that different action was warranted, and (2) recommended that Murphy's license to practice in the Eastern District of Pennsylvania be suspended for five years. The Chief Judge on behalf of the full Court adopted the Panel's recommendation.

Murphy appeals.

II[7]

A federal court should impose reciprocal discipline only after examining "the state proceeding for consistency with the requirements of due process, adequacy of proof and absence of any indication that imposing reciprocal discipline would result in grave

---

parties appealed the committee's decision to the Board, which concluded a new disciplinary hearing was warranted and appointed a special master to oversee the new proceeding. Id. at 361.

[7] The District Court exercised jurisdiction pursuant to its "inherent authority to set requirements for admission to its bar and to discipline attorneys who appear before it." In re Surrick, 338 F.3d 224, 229 (3d Cir. 2003). We have jurisdiction to review the District Court's final order pursuant to 28 U.S.C. § 1291.

We review the District Court's decision concerning reciprocal action for abuse of discretion. Id. at 232. We review the District Court's factual findings for clear error, Adams v. Ford Motor Co., 653 F.3d 299, 304 (3d Cir. 2011), and legal determinations de novo, In re Surrick, 338 F.3d at 229.

injustice." In re Surrick, 338 F.3d 224, 231-32 (3d Cir. 2003) (quoting In re Jacobs, 44 F.3d 84, 88 (2d Cir. 1994)). The Eastern District of Pennsylvania has codified these requirements in its local rules. E.D. Pa. Loc. Civ. R. 83.6(II)(D) (providing that the court should impose reciprocal discipline unless the state procedure deprived the attorney of due process, the court has a clear conviction that it cannot accept the state court's conclusion, reciprocal discipline would result in grave injustice, or the court concludes substantially different action is warranted); see also In re Surrick, 338 F.3d at 231 n.6 (discussing Rule 83.6(II)(D)).

Our job is to determine whether the District Court "abused its discretion in relying on the state proceedings as the basis for its decision to impose reciprocal discipline." In re Surrick, 338 F.3d at 232. Such an abuse of discretion is shown when the attorney proves by clear and convincing evidence that the proceedings were flawed or the discipline would result in a grave injustice. Id. Here, the District Court did not abuse its discretion when it concluded that Murphy had not carried his burden.

A

The state disciplinary proceedings did not violate Murphy's due process rights. Murphy was (1) notified of the charges by the ODC's letter and the petition for discipline, (2) afforded the opportunity to present evidence and witness testimony before the special master during the disciplinary hearing, and (3) given chances to present oral and written argument before the special master, the Board, and the Pennsylvania Supreme Court. Thus, Murphy had ample notice and a meaningful opportunity to respond to the charges against him. See Matthews v. Eldridge, 424 U.S. 319, 333 (1976) ("The

6

fundamental requirement of due process is the opportunity to be heard at a meaningful time in a meaningful manner." (quotation marks omitted)).

Murphy's counterarguments are meritless. First, Murphy argues that he was not given fair notice because the Board retroactively applied Pennsylvania Code of Judicial Conduct Rule 2.9 to determine that the phone call between the Judge's secretary and opposing counsel was not an improper ex parte communication.[8] Instead of Rule 2.9, which was enacted in 2014, Murphy argues the Board should have applied the code of ethics for workers' compensation judges in effect in 2010, which required judges to "[a]void ex parte communications in any contested, on-the-record matter pending before the department," without any apparent exceptions. 77 Pa. Cons. Stat. § 2504 (2010).

Murphy's argument fails, however, because even under the applicable law in 2010, the phone call between the Judge's secretary and opposing counsel was not improper. When the call occurred in 2010, the Judicial Code of Conduct stated that ex parte communications were prohibited "except as authorized by law," 207 Pa. Code

---

[8] Pennsylvania Code of Judicial Conduct Rule 2.9 provides:

[w]hen circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:
(a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and
(b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

207 Pa. Code Rule 2.9(A)(1).

Canon 3(A)(4) (2010), indicating that not all direct communications between a judge and a party were improper. Indeed, the case law defining an ex parte communication in 2010 would have permitted the communication that occurred here. Under Pennsylvania law, the "common and approved usage" of the term ex parte is "communications between the decision-maker and one party outside of the record and where the other party does not have notice or opportunity to contest." Mercy Reg'l Health Sys. of Altoona v. Dep't of Health, 645 A.2d 924, 929 (Pa. Commw. Ct. 1994). Here, Murphy had notice of the alleged ex parte communication because (1) he received a voicemail with the same information provided to opposing counsel, and (2) opposing counsel copied Murphy on a letter sent to the Judge memorializing the phone call. Further, Murphy had previously received similar phone calls from the Judge's secretary, and there is no evidence he took issue with the Judge's practice of doing so prior to this occasion. Thus, the phone call was not an ex parte communication under then-governing law and the mention of Rule 2.9 was therefore harmless.[9]

Second, contrary to Murphy's contention, the District Court's finding that the ODC did not withhold any evidence from Murphy was not clear error. The special master reviewed the ODC file in camera and concluded that all witness statements were provided to Murphy and that the ODC had not withheld any exculpatory documents.

---

[9] Importantly, the Board also concluded several other statements Murphy made during the various lawsuits he filed were knowingly false and worthy of discipline. On appeal, Murphy does not meaningfully address these additional bases for the Board's conclusions.

Thus, Murphy had an opportunity to present his case with all the evidence to which he was entitled.

Third, the years-long delay between the ODC's initial letter notifying Murphy of the complaint against him and its filing of a petition for discipline also did not violate Murphy's due process rights. The Board may defer the processing of a complaint when it "involv[es] material allegations which are substantially similar to the material allegations of pending criminal or civil litigation" and the Board determines "good cause . . . authorizes such deferment." Pa. R.D.E. § 211. Here, the Board determined that the ongoing workers' compensation case in which Murphy was alleging improper ex parte communications constituted such a pending litigation and that there was good cause to defer the disciplinary proceedings because the outcome of the worker's compensation case might be "useful" to either Murphy or the ODC. J.A. at 265, Murphy v. Off. of Disciplinary Couns., 820 F. App'x 89 (3d Cir. 2020) (No. 19-3526), ECF No. 38. For example, if an improper ex parte contact was found to have occurred in the workers' compensation case, there would no longer be a basis for the disciplinary proceedings. Furthermore, Murphy himself recognized he may benefit from a delay in the disciplinary proceedings because, in his response to the ODC's initial letter, he requested a deferment of the proceedings pending the resolution of the workers' compensation case. Murphy v. Off. of Disciplinary Couns., No. 17-cv-01239, ECF No. 11, at 1-2, 35 (E.D. Pa.) (requesting, "at a minimum," that the disciplinary proceedings be "abated, suspended, and/or deferred" pursuant to Pa. R.D.E. § 211). As such, the deferment of the disciplinary proceedings did not violate Murphy's due process rights.

9

B

The District Court also accurately concluded that Murphy failed to show an infirmity of proof in the state proceedings, that the imposition of reciprocal discipline would work a grave injustice, or that a substantially different punishment was warranted. Murphy mainly relitigates his claim that the workers' compensation judges engaged in ex parte communications. His repeated accusations of judicial misconduct were baseless, violated several RPCs, and justified significant discipline. As such, the District Court acted well within its discretion in imposing reciprocal discipline.

III

For the foregoing reasons, we will affirm.